**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.C. and M.C.**

**No. 21-0363** (Monongalia County 20-JA-60 and 20-JA-61)

## MEMORANDUM DECISION

Petitioner Mother H.B., by counsel Elizabeth B. Warnick, appeals the Circuit Court of Monongalia County's April 8, 2021, order terminating her parental rights to C.C. and M.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cheryl L. Warman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the family when the DHHR failed to timely file a family case plan. She further argues that the circuit court erred in failing to impose a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner's substance abuse resulted in probation violations and incarcerations, which led to her inability to care for the children. The investigating Child Protective Services ("CPS") worker confirmed that petitioner tested positive for methamphetamine in October of 2019, which violated a term of her probation. As a result, petitioner was incarcerated briefly and released in the same month. Thereafter, CPS workers monitored the family and implemented a safety plan. However,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, although the scheduling order includes K.B., she has reached the age of majority and is no longer at issue in this appeal.

1

in November of 2019, petitioner and her boyfriend tested positive for methamphetamine and failed to submit to drug screens after December 6, 2019. The DHHR soon lost contact with petitioner thereafter. On February 21, 2020, the children's school principal contacted CPS and reported that petitioner appeared to be under the influence of drugs at the school. The CPS workers in conjunction with petitioner's probation officers arranged to have petitioner submit to a drug screen that evening. However, petitioner failed to provide a sample and was subsequently arrested and incarcerated for violating the terms of her probation. The DHHR also alleged that petitioner and her boyfriend were evicted approximately two weeks prior. According to DHHR records, petitioner has an extensive history of CPS involvement regarding substance abuse and domestic violence since 2010. The DHHR concluded that petitioner's substance abuse negatively impacted her ability to parent the children. Thereafter, petitioner waived her preliminary hearing and was released from incarceration on April 13, 2020.

The circuit court held an adjudicatory hearing in May of 2020, during which petitioner signed a stipulation to the allegations of abuse and neglect and signed an agreement outlining the goals and requirements of her case plan. The terms included requiring petitioner to cooperate in services to overcome the problems stated in the petition; participate in the multidisciplinary team ("MDT") process, including following the MDT's recommendations; undergo a drug and alcohol assessment; participate in any recommended drug and alcohol counseling; submit to random drug screens; and execute all necessary medical releases. Additionally, petitioner was to continue to participate in community corrections programming pursuant to the terms of her probation, which also included drug testing and counseling.

In July of 2020, petitioner filed a motion for a post-adjudicatory improvement period, citing her previous stipulation and stating that she would comply with any terms imposed by the court, the DHHR, and the MDT. The same month, the circuit court held a hearing on petitioner's motion and granted the same. The circuit court's order granting petitioner's improvement period included the terms and requirements, which included the terms petitioner previously agreed to in her stipulation as well as specific services such as supervised visitations and parenting education classes. The court noted that petitioner was currently enrolled in drug treatment in Parkersburg, West Virginia.

The DHHR filed a report prior to the circuit court's review hearing in October of 2020. The report indicated that the parties held an MDT meeting in August of 2020 and learned that petitioner was no longer participating in drug treatment in Parkersburg, West Virginia, but was enrolling into the Comprehensive Opioid Addiction Treatment ("COAT") program at the Chestnut Ridge Center in Morgantown. At the review hearing in October of 2020, the circuit court found that petitioner was compliant with services and ordered that the terms of her improvement period continue. However, petitioner failed to submit to a drug screen immediately after the hearing.

In January of 2021, the DHHR submitted another report prior to the final review hearing for petitioner's post-adjudicatory improvement period. The report indicated that petitioner stopped participating in parenting education in mid-October of 2020. Petitioner told MDT members in November of 2020 that she was hospitalized for surgeries from October 26, 2020, through October 30, 2020, and from November 2, 2020, to November 6, 2020. She further told MDT members that she was increasing her therapy sessions at the COAT program, which included medication-assisted

drug treatment. Petitioner missed a drug screen scheduled for November 12, 2020. However, the report indicated that in December of 2020, the guardian disclosed discovery which included an interview with petitioner's probation officer who stated that petitioner was on the "verge of being kicked out of the [COAT] program." The probation officer further explained that petitioner was not compliant with the terms of her probation, as she had missed ten drug screens and failed to attend her probation revocation hearing in December of 2020, resulting in the court issuing a capias for her arrest. Upon further inquiry by the guardian, staff at the COAT program indicated that petitioner had not submitted a single drug screen since she began the program in August of 2020. Additionally, a parenting education provider reported in early January of 2021 that petitioner had become noncompliant for the second time. At the final review hearing also held in January of 2021, the court ordered that supervised visitations with the children cease due to petitioner's active capias and set the matter for disposition.

The court held a dispositional hearing in February of 2021. Petitioner failed to appear, but counsel represented her. Petitioner's counsel proffered that her client was unable to attend the hearing because she was receiving cancer treatment. Nonetheless, the circuit court heard evidence but postponed the final hearing to allow petitioner to attend. First, the probation officer testified consistent with the DHHR's report regarding petitioner's noncompliance with her probation and the COAT program. The officer added that petitioner often gave excuses for her inability to report to the probation officer for weekly meetings and drug screens, including that she lacked transportation or was sick or was hospitalized. According to the officer, petitioner had not reported in-person to the probation department since September of 2020. The officer stated that petitioner did not tell her that she had cancer but confirmed that petitioner was treated for mononucleosis in June of 2020. The officer explained that she filed her fourth petition to revoke petitioner's probation in November of 2020 and that when petitioner failed to attend the probation hearing in December of 2020, the court issued a capias for her arrest. Petitioner further failed to appear at her hearing on the motion to reconsider revoking her probation. At the close of the hearing, the circuit court ordered petitioner's counsel to furnish medical documentation to excuse petitioner's various absences.

In March of 2021, the circuit court held the final dispositional hearing. Petitioner failed to appear, but counsel represented her. When asked about petitioner's whereabouts, counsel stated that she had not spoken to petitioner since the prior Monday at the MDT meeting, during which petitioner appeared remotely for fear of arrest at the courthouse. Petitioner's counsel surmised that petitioner failed to appear for the hearing for fear of arrest. Further, counsel explained that petitioner was made aware at the MDT that she was to supply medical documentation to excuse her various failures to attend hearings, drug screens, and other services, but she failed to do so. In light of this, the court found that petitioner was aware of the hearing and chose not to attend. The court proceeded to hear the testimony of the CPS worker who stated that the DHHR recommended the termination of petitioner's parental rights based on her failure to comply with the terms of her improvement period. The worker explained that petitioner had not completed adult education classes and misled the DHHR workers to believe that she was receiving drug screening and therapy through her probation when petitioner had not participated since September of 2020. The worker reiterated that petitioner stopped participating in the COAT program in August of 2020. The worker stated that in his opinion, petitioner had been dishonest and manipulative throughout the proceedings and knew what was required of her as she attended all MDT meetings.

3

During the hearing, petitioner's counsel stated that she received an e-mail from someone purporting to be a friend of petitioner's containing an attached letter from petitioner's doctor stating that petitioner voluntarily admitted herself to the hospital for psychiatric care the day prior. Petitioner's counsel then made closing arguments stating that petitioner was unaware of the requirements of her improvement period as the DHHR failed to file a case plan until February of 2021 and further requested an alternative disposition to the termination of petitioner's parental rights. The guardian argued in favor of termination, highlighting the fact that petitioner's capias remained outstanding and that petitioner had a high likelihood of serving a prison sentence once arrested. She further stated that petitioner was fully aware that she needed to complete drug treatment yet failed to do so and waited until disposition to complain about the case plan.

Based on the evidence, the circuit court found that petitioner's improvement period was unsuccessful and noted petitioner's lack of improvement by stating "[i]f you look at where we are right now, we are exactly where we were in 2019." The court took exception to petitioner's claim that she did not know what was required of her as the court specifically ordered her to drug screen at several hearings and the MDT members requested her to drug screen, yet she failed to submit to the majority of the drug screens. Additionally, the court noted that petitioner finished a portion of her parenting education classes before ceasing participation. The court found that petitioner avoided drug screens because she would test positive for illicit drugs. Finally, the court recognized petitioner's voluntary hospital admission the night prior as another "manipulative scheme" designed to delay the proceedings and noted that petitioner never provided medical documentation to excuse her lack of participation in the case. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interest. The circuit court terminated petitioner's parental rights by order entered on April 8, 2021.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The father successfully completed his improvement period, the children were reunified with him, and he was dismissed from the proceedings.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that the DHHR made reasonable efforts to reunify the family when it failed to timely file a family case plan as required by West Virginia Code § 49-4-408(a). According to petitioner, the only family case plan was filed on February 18, 2021, more than sixty days after the children were placed in foster care. *See* W. Va. Code § 49-4-408(a) ("The case plan must be filed within sixty days of the child coming into foster care or within thirty days of the inception of the improvement period, whichever occurs first."). However, a review of the transcript from the final dispositional hearing shows that petitioner's counsel also referred to a case plan that was filed on July 21, 2020, after the MDT agreed to the terms of petitioner's improvement period. Additionally, during the guardian's closing arguments, she highlighted the fact that petitioner waited many months into the case to complain about the lack of specificity of the case plan, indicating that she was referring to the one formulated after petitioner's MDT in July of 2020. As such, there is conflicting evidence regarding when the case plan was filed.[3]

Nonetheless, we find that even if the DHHR failed to file its case plan in a timely manner, it does not, under the limited facts of this case, constitute reversible error. As this Court has explained,

> "[t]he purpose of the family case plan as set out in W.Va. Code [§ 49-4-408(a)] . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003). Here, petitioner concedes that the DHHR filed a case plan at least five days prior to the dispositional hearing in accordance with West Virginia Code § 49-4-604(a), and the record is full of other instances that show that petitioner was on notice of her goals and requirements. Petitioner signed an agreement at the adjudicatory hearing in May of 2020 that contained terms requiring her to cooperate in services to overcome the problems stated in the petition; participate in MDT meetings and heed the MDT's recommendations; undergo a drug and alcohol assessment; participate in any recommended drug and alcohol counseling; submit to random drug screens; and execute all necessary medical releases. Additionally, petitioner was required to participate in community corrections programming through her probation, which included drug testing and counseling. Further, petitioner stated that she would comply with any terms imposed by the court, the DHHR, and the MDT in her motion for a post-adjudicatory improvement period. Most importantly, the circuit court's order granting petitioner's improvement period explicitly outlined the terms of her improvement period, which included the terms petitioner previously agreed to in her stipulation as well other specific services such as supervised visitations and parenting education classes. As such, there is clear evidence that there was a case plan, that petitioner knew the contents of the case plan, and thus knew what was required of her to regain custody of the children. Petitioner's arguments

---

[3]The certified docket sheet did not show the filing of either case plan.

5

that she not given any "written schedule of services or goals" is disingenuous when faced with the above evidence in the record.

Next, petitioner argues that the circuit court erred in failing to impose disposition pursuant to West Virginia Code § 49-4-604(c)(5). In her brief, she states that the circuit court failed to consider "relative placement" with either the father or the grandmother "as a compelling reason not to terminate petitioner's parental rights." However, this disposition does not apply here as the children were ultimately returned to the full custody of a parent. *See* W. Va. Code § 49-4-604(c)(5) ("Upon a finding that the abusing parent . . . [is] presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court."). Regardless, petitioner is not entitled to have her parental rights remain intact solely because the children were reunified with father. The circuit court determined that the father was a fit parent after the successful completion of his improvement period, and reunified the children with their parent—the primary goal of a child abuse and neglect matter. We have previously held that "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Petitioner claims that she was the primary caregiver for the children prior to removal and was bonded with them. However, these arguments fail to address the best interests of the children, which was to be reunified with a fit parent. "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014) (citation omitted). Also, when considering the above evidence, it is clear that the children would be endangered if returned to petitioner's care given her complete failure to address any of the conditions that led to the filing of the petition, including her looming arrest for violating and absconding from probation.

Insomuch as petitioner argues that the circuit court should have allowed her more time to demonstrate that she could correct the conditions of abuse and neglect and resolve her pending probation matter, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Here, the children spent nearly thirteen months in foster care before being reunified with their father, and the circuit court noted this when it imposed disposition. The court further noted that petitioner failed to address her probation revocation and resulting capias for several months prior to the final dispositional hearing and refused to attend and participate in both dispositional hearings.

Most importantly, petitioner does not challenge the circuit court's finding pursuant to West Virginia Code § 49-4-604(c)(6) that it was proper to terminate petitioner's parental rights as there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Therefore, petitioner was not entitled to any less-restrictive alternative disposition. We have held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: January 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton